UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSEPH HICKEY,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **JOSEPH SMITH,** *et al.*, <br><br> Defendants. | Case No. 1:22-cv-02343 (TNM) |

**MEMORANDUM OPINION**

Plaintiff Joseph Hickey claims to be a part owner of a restaurant chain with locations in New York and Washington, D.C. He mainly alleges that Defendants unlawfully withheld income distributions owed to him and conspired to defraud him of his ownership interests in certain restaurants. Some Defendants moved to dismiss the Complaint for failure to state a claim or in favor of arbitration. Because at least some of Hickey's claims must be presented to an arbitrator in New York, which this Court cannot compel, the Court will transfer this case to a court that can—specifically, the Southern District of New York.

I.

In the early 1990s, Plaintiff Joseph Hickey and Defendants Joseph Smith, Richard Passarelli, and Joseph Phair founded the first Bobby Van's Restaurant, in Bridgehampton, New York. Am. Compl. (Compl.) ¶ 20. Over the years, the partners opened several restaurants operating under the trade name "Bobby Van's" in New York and Washington, D.C. *Id.* ¶ 22, ¶¶ 7–13. Some restaurants were quite profitable, paying out significant income distributions annually. *See, e.g., id.* ¶¶ 23–25. Defendant Joseph Grillo served as the accountant and financial advisor for the Bobby Van's restaurants. *Id.* ¶ 4.

At first, the partners shared relatively even ownership stakes in each restaurant. *See id.* ¶ 22. In the years that followed, however, the partners transferred some of their respective interests among themselves and to others. The heart of this case is about the effect of two alleged transfers by Hickey of his shares.

First, Hickey signed a Stock Purchase Agreement (2017 SPA) with Smith and Phair. *See* 2017 SPA, ECF No. 30-2. The subject of the agreement was Hickey's stock in six Bobby Van's restaurants. Hickey contends that the agreement created an option "to buy his remaining ownership interests at $100,000 per year for each year of the option." Compl. ¶ 31. But Hickey argues that the 2017 SPA was voided a year later when Smith informed him that there would be no more payments under the agreement. *Id.* ¶ 42. Smith disagrees on both scores. At the time of signing, Smith provided Hickey a check for $100,000, *id.* ¶ 34, and Smith alleges that this payment consummated a transfer of each restaurant's shares to him and Phair.

In 2021, Hickey and Smith entered into an Amended Stock Purchase and Sale Agreement (2021 ASPA). *See* 2021 ASPA, ECF No. 30-3. The 2021 ASPA, recognizing that "certain purchase terms from the [2017 SPA] remain unfulfilled," purported to be "a definitive superseding agreement for the sale and purchase of [Hickey's] Ownership Interest" in five of the Bobby Van's restaurants that were the subject of the 2017 SPA. *Id.* Smith paid Hickey $200,000 under the agreement. Compl. ¶ 49.

Relevant here, the 2017 SPA and 2021 ASPA both contain mandatory arbitration clauses. Both specify that any disputes arising out of or relating to the agreement must be resolved in arbitration in New York. *See* 2017 SPA ¶ 7(b); 2021 ASPA ¶ 14. Hickey did not seek arbitration, and this suit followed. His Complaint is sprawling, but its thrust is that Defendants conspired to fraudulently acquire and transfer among themselves his shares in the restaurants.

2

According to Hickey, they did this to withhold income distributions owed to him and increase their own profits.  In the process, Hickey says, Defendants breached their fiduciary duties to him and violated federal racketeering laws.  After some Defendants moved to dismiss for failure to state a claim or in favor of arbitration, the Court held a motions hearing.

## II.

Smith asks the Court to enforce the arbitration clauses and dismiss the Complaint so that the parties can arbitrate.  *See* Smith Mot. to Dismiss (Smith MTD) at 30–32, ECF No. 30.  Under the Federal Arbitration Act (FAA), "a party aggrieved by the failure of another party to arbitrate under a written agreement for arbitration may petition a federal court for an order directing that such arbitration proceed in the manner provided for in such agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  And even when the motion is "styled as a motion to dismiss," "the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions." *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003).

Thus, when considering a motion to compel arbitration under the FAA, courts ask whether "no genuine dispute as to any material fact" exists regarding the existence of the arbitration agreement so that the movant is entitled to enforcement of the agreement as a matter of law.  *See* Fed. R. Civ. P. 56(a).  When doing this, courts must "draw reasonable factual inferences in the light most favorable to . . . the nonmovant." *Lash v. Lemke*, 786 F.3d 1, 6 (D.C. Cir. 2015).  But the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  The

nonmoving party "must do more than simply show that there is some metaphysical doubt as to" the formation or enforceability of the agreement.[1]  *Id.*

### III.

The FAA reflects "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  By providing that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon any grounds as exist at law or in equity," 9 U.S.C. § 2, the Act "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms," *Rent-A-Center*, 561 U.S. at 67.  And because of the Act's presumption favoring enforcement of arbitration agreements, courts must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25.

Naturally, the FAA is in play only when there is an enforceable arbitration agreement. And "[b]ecause arbitration is a contractual matter," the Court must "first determine whether the parties have agreed to arbitrate by looking to state contract law." *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021).  Hickey suggests that the Court should look to New York contract law to determine whether the parties entered into a valid and binding arbitration agreement.  *See* Pls.' Opp'n to Smith Mot. to Dismiss (Opp'n Smith MTD) at 18–19, ECF No. 34.  The Court agrees. Both contracts provide that that they will be governed by the laws of the State of New York.  *See* 2017 SPA ¶ 7(b); 2021 ASPA ¶ 13.

---

[1] The Court relies on the 2017 SPA and 2021 ASPA because Hickey references them throughout his Complaint, thus incorporating them by reference.  *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

In New York, "[t]o form a binding contract there must be a meeting of the minds, such that there is a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Stonehill Cap. Mgmt., LLC v. Bank of the West*, 68 N.E.3d 683, 689 (N.Y. 2016) (cleaned up). More, under New York law, "if a party signs or otherwise assents to an agreement with an arbitration provision, they will be bound by it even if they did not read it." *Lewis v. ANSYS, Inc.*, No. 19-cv-10427, 2021 WL 1199072, at *5 (S.D.N.Y. March 30, 2021). It is undisputed that Hickey signed the 2017 SPA and 2021 ASPA, and he does not otherwise challenge the formation of the contracts. Thus, the Court concludes that Smith has met his burden to show the existence of an agreement to arbitrate.

Although Hickey does not dispute the contracts' formation, he raises other challenges to the arbitration provisions' applicability. Ordinarily courts, not arbitrators, decide "gateway . . . question[s] of arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). One gateway question is whether, under applicable state law, the parties are even bound by an arbitration agreement to begin with. *See id.* at 84; *see also, e.g.*, *Law Firm of LawJack, PLLC v. Citibank, N.A.*, No. 21-cv-1592, 2021 WL 4192030, at *6 (D.D.C. Sept. 15, 2021) (questions of arbitrability include whether an "arbitration agreement is no longer operative"). Similarly, whether an arbitration clause applies to a particular claim presents a question for the Court. *See Howsam*, 537 U.S. at 84. On the other hand, "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." *Id.* (cleaned up).

For different reasons, Hickey argues that none of his claims are subject to arbitration under either the 2017 SPA or 2021 ASPA. *See* Opp'n Smith MTD at 18–20. First, he contends that the 2017 SPA "has been cancelled, terminated, and expired for several years now." *Id.* at 19. Second, Hickey says that Smith waived any possible arbitration rights under the 2017 SPA

based on his litigation conduct in a related, now-dismissed case. *Id.* Third, Hickey argues that his claims fall outside the scope of the 2021 ASPA because "[t]he issues in this case are largely fraud issues that stand on their own." *Id.* at 19–20.

To be sure, some of Hickey's challenges present "question[s] of arbitrability." *Howsam*, 537 U.S. at 84. Even so, these disputes must be presented to an arbitrator in New York, not this Court. As we will see, the parties delegated the authority to decide these questions to the arbitrator. And gateway questions of arbitrability may not be decided by courts when the "parties clearly and unmistakably provide otherwise." *Id.* (cleaned up). That is, "parties can agree to arbitrate gateway questions of arbitrability," and "the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center*, 561 U.S. at 68–69.

The 2017 SPA and 2021 ASPA "unmistakably provide" that the kinds of challenges Hickey now raises belong before an arbitrator. *Howsam*, 537 U.S. at 83. The 2017 SPA states that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation of validity thereof, including the determination of the scope of the applicability of this Agreement to arbitrate, shall be determined by arbitration in New York, New York[.]" 2017 SPA ¶ 7(b). This "broad, all-encompassing language" is "clear evidence that the parties agreed to arbitrate all issues" arising among them, including gateway questions of arbitrability. *W&T Travel Servs., LLC v. Priority One Servs., Inc.*, 69 F. Supp. 3d 158, 167 (D.D.C. 2014).

The 2021 ASPA's arbitration provision is not as broadly worded, but it still yields the same result. That provision provides that "[a]ny dispute or Claim arising hereunder . . . shall be presented for binding arbitration . . . in New York, NY[.]" 2021 ASPA ¶ 14. Key here, the agreement incorporates the rules of the American Arbitration Association. *See id.* (providing

that arbitration must occur "in accordance with the Commercial Arbitration Rules of the American Arbitration Association"). And courts in this district have "repeatedly held that adopting the AAA rules makes the issue of arbitrability one for the arbitrator, not the court, to decide." *Sakyi v. Estee Lauder Cos., Inc.*, 308 F. Supp. 3d 366, 378 (D.D.C. 2018); *see also id.* (collecting cases and noting that "every circuit to address this question has reached the same conclusion").

As the arbitration agreements in this case delegate issues of arbitrability to the arbitrator, and Hickey has not "challenged the delegation provision[s] specifically," *Rent-A-Center*, 561 U.S. at 72, Hickey's disputes are properly before the arbitrator rather than this Court.

**IV.**

Because Hickey's threshold challenges to the arbitration provisions' enforcement must be decided in arbitration, the Court finds that Smith has a right to compel Hickey to present his claims to an arbitrator. The FAA gives courts the authority to issue "an order directing the parties to proceed to arbitration in accordance with the terms of the" arbitration provision. 9 U.S.C. § 4. But that authority is limited: the FAA provides that arbitration proceedings "shall be within the district in which the petition for an order directing such arbitration [wa]s filed." *Id.* This limitation matters because the arbitration provisions here provide for arbitration to take place in New York City. *See* 2017 SPA ¶ 7(b); 2021 ASPA ¶ 14.

Having concluded that Hickey's claims must proceed to arbitration, the Court considers whether it may compel arbitration in this case. This Court may not. First, this Court cannot compel arbitration in New York. To do so would violate the plain language of the FAA's text, which specifies that a court can compel arbitration only "within the district in which the petition for an order directing such arbitration [wa]s filed." 9 U.S.C. § 4. Nearly every circuit to have

7

considered this question agrees that a district court would exceed its statutory authority if it compelled arbitration outside its own district. *See, e.g.*, *Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005); *but see Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275 (5th Cir. 1975) (allowing district court to compel arbitration in the district specified by the arbitration agreement even though that district was outside the court's jurisdiction).

Nor can this Court compel the parties to arbitrate in this district. Both arbitration provisions expressly require the parties to arbitrate in New York, and this Court may not ignore the parties' contractually chosen forum. The FAA requires that "the court . . . make an order directing the parties to proceed to arbitration *in accordance with the terms of the agreement*." 9 U.S.C. § 4 (emphasis added); *but see Textile Unlimited, Inc. v. A. BMH & Co.*, 240 F.3d 781, 783 (9th Cir. 2001) (allowing district court to compel arbitration in its district even though the arbitration agreement specified a forum outside the district). So the Court lacks authority under the FAA to compel arbitration in the forum specified in the arbitration agreements.

But that is not the end of the matter. "When confronted with similar circumstances, other courts have transferred the case to a district where venue would be proper and where a court would have the authority to issue an order compelling arbitration consistent with the parties' agreement." *Mitchell v. Craftworks Rests. & Breweries, Inc.*, No. 18-cv-879, 2018 WL 5297815, at *12 (D.D.C. Oct. 25, 2018). District courts "always have the discretion to transfer civil cases to another district '[f]or the convenience of parties and witness,' or 'in the interest of justice,' so long as jurisdiction would be proper." *Id.* (quoting 28 U.S.C. § 1404(a)).[2]

---

[2] Courts may transfer a case sua sponte under § 1404(a). *See In re Scott*, 709 F.2d 717, 721 (D.C. Cir. 1983); *see also Montgomery v. Barr*, 502 F. Supp. 3d 165, 179 (D.D.C. 2020). That said, the Court notes that Smith, Grillo, Phair, and five restaurant Defendants argued at oral

8

In deciding whether to transfer a case, courts generally consider "both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause." *Id.* at 63. A forum-selection clause must be "given controlling weight in all but the most exceptional cases." *Id.* Arbitration clauses are manifestations of the parties' preferences as to a convenient forum and operate, "in effect, [as] a specialized kind of forum-selection clause." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630 (1985); *see also Stewart Org., Inc. v. Ricoh, Corp.*, 487 U.S. 22, 36 (1988) (Scalia, J., dissenting) (considering an arbitration clause "a kind of forum selection clause").

Courts apply a two-step process to determine whether to transfer a case based on a forum-selection clause. First, they look to whether a forum-selection clause is valid and covers the parties' dispute. *See Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874 (D.C. Cir. 2019). And courts presume "that a mandatory forum-selection clause is legally valid and enforceable absent a strong showing" otherwise. *Id.* (cleaned up). Second, courts determine whether public-interest factors "overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 67. And here, "as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 64.

At step one, the Court sees nothing to overcome the presumption of enforceability. Recall that both forum-selection clauses delegate questions of arbitrability—such as whether the arbitration provision is valid or whether it covers a particular dispute—to the arbitrator. *See*

---

argument that the Court should transfer this case to New York so that it may proceed in arbitration. *See* Tr. of Mot. Hr'g (Hr'g Tr.) at 29, 41.

9

2017 SPA ¶ 7(b); 2021 ASPA ¶ 14. And Hickey has not "challenged the delegation provision[s] specifically," *Rent-A-Center*, 561 U.S. at 72, much less made a "strong showing" that the provisions are invalid, *Azima*, 926 F.3d at 874.

That leaves only step two: has Hickey, as the party opposing enforcement of a presumptively valid forum-selection clause, met his "burden of showing that public-interest factors overwhelmingly disfavor a transfer?" *Atl. Marine*, 571 U.S. at 67. He has not.

Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). Hickey does not address how these factors weigh against transfer. Rather, he argues that it would be "most convenient" for this case to proceed in this district because his attorney practices here. Hr'g Tr. at 42. But this fails to move the needle. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less inconvenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 875–76. And regardless, "the location of counsel carries little, if any, weight" under § 1404(a). *State v. U.S. Army Corps of Eng'rs*, 304 F. Supp. 3d 56, 66 (D.D.C. 2018) (collecting cases).

Hickey has not shown that the public interest would "overwhelmingly disfavor" transfer. *Atl. Marine*, 571 U.S. at 67. So the Court will transfer this case to a district court with the authority under the FAA to enforce the parties' forum-selection clauses and compel arbitration.[3]

---

[3] Some Defendants are not parties to either the 2017 SPA or 2021 ASPA. The doctrine of equitable estoppel permits "a non-signatory [to] compel arbitration with a signatory when the non-signatory is seeking to resolve issues that are intertwined with an agreement that the signatory has signed." *Sakyi*, 308 F. Supp. 3d at 385. This Court need not decide whether that doctrine applies here. Transfer is justified even if only some Defendants could enforce the

There is a final wrinkle.  Both arbitration provisions contemplate arbitration in New York City.  *See* 2017 SPA ¶ 7(b); 2021 ASPA ¶ 14.  And New York City is made up of five boroughs, three of which are in the Eastern District and two of which are in the Southern District.  After conducting an "individualized, case-by-case consideration of convenience and fairness," *see Stewart Org.*, 487 U.S. at 27, the Court finds that transfer to the Southern District is most appropriate.  Of the five restaurant Defendants located in New York, four are found in the Southern District.  And when asked at oral argument, the parties expressed a preference for the Southern District over the Eastern District.[4]  *See* Hr'g Tr. at 17, 36, 41.

## V.

Hickey voluntarily entered into two contracts containing broad mandatory arbitration provisions.  He cannot now escape their obligations by suing in this District.  Thus, the Court will transfer this case to the Southern District of New York.

A separate Order will issue today.

Dated: February 14, 2023                             TREVOR N. McFADDEN, U.S.D.J.

---

arbitration clauses.  "[I]t would be inefficient and wasteful to bifurcate [Hickey's] claims, transfer only some, and have this dispute be litigated in two separate forums." *Revis v. Tustin Constr. Servs.*, LLC, 322 F. Supp. 3d 58, 62 (D.D.C. 2018).  For the same reason, the Court will transfer Plaintiff Ulrich's claims, though Ulrich is not a signatory to the arbitration agreements.  "One court should resolve all claims." *Edebiri v. N. Highland Co. LLC*, No. 20-cv-758, 2020 WL 5411303, at *2 (D.D.C. Sept. 9, 2020).

[4] Smith, Grillo, and five restaurant Defendants said that they have no preference between the Southern or Eastern District.  *See* Hr'g Tr. at 29.